IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JANE DOE, a student, by and through
her parent and guardian, MARY DOE,

    Plaintiff,

v.                                        No.: 17-01174- STA-egb

JACKSON MADISON COUNTY BOARD
OF EDUCATION,

    Defendant.

---

### ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

---

Plaintiff Jane Doe, a special education student, by and through her parent and guardian Mary Doe, has filed this action against Defendant Jackson Madison County Board of Education pursuant to Title IX, 20 U.S.C. § 1681; the Fourteenth Amendment through 42 U.S.C. § 1983; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and Tennessee's Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-205. Defendant has moved to dismiss Plaintiff's claim brought under § 504 of the Rehabilitation Act claim, the ADA claim, and the GTLA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18.) Plaintiff has filed a response to the motion (ECF No. 19), and Defendant has filed a reply to the response. (ECF No. 20.) For the reasons set forth below, Defendant's motion is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). Legal conclusions and unwarranted factual inferences, however, need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975); and *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## BACKGROUND

Plaintiff Jane Doe, a nineteen-year-old special education student, through Mary Doe, her mother, alleges that on February 9, 2017, she was sexually assaulted by an eighteen-year-old special education student, Charlie Smith, during their Social Based Skills ("SBS") class at North Side High School. North Side High School is a school within the Jackson Madison County School System. The alleged assault occurred while the classroom was being supervised, but the teacher in charge was occupied with another student in the SBS classroom.

The complaint further alleges that Jane Doe did not report the assault to school officials but, instead, waited until that evening to inform Mary Doe of the incident. Mary Doe reported the incident to school personnel and notified the police on that same day. The next morning, Mary Doe went to North Side High School. However, because she was accompanied by two attorneys, school personnel would not discuss the alleged incident.

Following the incident, Mary Doe kept Jane Doe home from school, where she remained for the rest of the school year. On April 4, 2017, Defendant conducted an Individualized Education Program ("IEP") meeting for Jane Doe, wherein it was recommended that Jane Doe attend North Side High School's "Transition Academy." However, Mary Doe continued to keep Jane Doe at home because Defendant could not assure her that Jane Doe would not come in contact with Charlie Smith. According to the complaint, Plaintiff is not aware of the level of any investigation into the incident taken by Defendant, and Plaintiff has no knowledge of any disciplinary action taken against Charlie Smith, other than a suspension that he received in February 2017.

## ANALYSIS

Claims Under the Rehabilitation Act and the ADA

Defendant first contends that Plaintiff has failed to state a claim under Title II of the ADA and § 504 of the Rehabilitation Act. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act likewise provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Thus, to state a claim under the ADA or § 504, a plaintiff must show that she is (1) disabled under the statute, (2) "otherwise qualified" for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of her disability. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 (6th Cir. 1995)).[1]

Defendant argues that Plaintiff has failed to allege that she was excluded from a program because of her disability in that the complaint states that she was sexually assaulted by Charlie Smith because of her gender. For example, the amended complaint alleges that Jane Doe, "on the basis of her sex, was excluded from participation in, denied the benefits of, and was subjected to discrimination in JMC's education program…," and Charlie Smith admitted to the alleged sexual assault, explaining that Jane Doe "was his girlfriend." (ECF 17, ¶¶ 36, 67, 72.)

---

[1] Title II of the ADA focuses on disability discrimination in the provision of public services while § 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Other than § 504's use of the word "solely" and its limitation to federally funded entities, "the reach and requirements of [both § 504 and Title II of the ADA] are precisely the same." *E. Ky. Univ.*, 532 F.3d at 452–53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002)); *see also Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016) (stating that, because the ADA and Rehabilitation Act "contain similar language and are quite similar in purpose and scope," they are "roughly parallel").

Plaintiff agrees that she is required to provide sufficiently detailed facts to establish, *inter alia*, that the harassment which led to her alleged exclusion was based on her disability but argues that she has, in fact, done so. In support of her argument, she points to the following allegations in her amended complaint:

• "Jane Doe was diagnosed at age 2 with Autism Spectrum Disorder," and "while Jane Doe possesses verbal skills, Jane Doe has significant cognitive and social skill deficits." (ECF 17, ¶¶ 9-10).

• "North Side High School has what Defendant calls a 'Social Based Skills' (SBS) classroom" which is a "self-contained special education classroom for children with pervasive disabilities who focus more on social and life skills than the typical academic skill acquisition present in a general education classroom." (*Id.* at ¶ 11).

• "the SBS classroom at North Side High School is commonly known as the classroom that older students with Autism, like Jane Doe, are placed" and "during the 2016-2017 school year, Jane Doe was placed in the SBS classroom with four other same age male students with Autism." (*Id.* at ¶¶ 12, 14).

• "during December 2016, an eighteen (18)-year-old male named Charlie Smith was added into Jane Doe's SBS classroom." (*Id.* at ¶ 15).

• "Charlie Smith does not have Autism like his five other classmates, but rather is classified as Intellectually Disabled, meaning that Charlie's full-scale IQ is below 70. Additionally, Charlie purportedly has been diagnosed with a 'sexually aggressive disorder.'" (*Id.* at ¶ 16).

• "JMC failed to conduct any evaluations of Charlie or develop an IEP for Charlie before placing him in the SBS classroom in December 2016. Instead, JMC opted to place Charlie in the SBS classroom with no protocol or training to North Side High School personnel about Charlie's known

5

sexual aggression and without providing Charlie any additional supports or services, or an IEP." (*Id.* at ¶ 19).

• After Charlie Smith's arrival and placement in the SBS classroom with Jane Doe, "Charlie Smith was caught looking at pornography on the school computers" and had to "redirected by his teacher (Ms. Armour) away from Jane Doe on several occasions." (*Id.* at ¶¶ 20, 31).

• "Charlie Smith, an eighteen (18) year old male with a known low IQ and history of sexual aggression by Defendant was thrown into a self-contained special needs classroom with three other males and one lone female, Jane Doe, who has Autism with impaired cognitive and social skills, and is thereby incapable of defending herself." (*Id.* at ¶ 50).

Viewing these allegations in the light most favorable to Plaintiff, in particular the allegations that she has impaired cognitive and social skills because of her disability and is incapable of defending herself because of her disability, i.e., autism, the Court finds that, at this juncture, Plaintiff has sufficiently alleged that she was assaulted because of her disability. Because Plaintiff has alleged more than "labels and conclusions" as required by *Twombly* and, instead, has offered supporting facts related to the alleged disability-based discrimination against her, the portion of Defendant's motion seeking to dismiss Plaintiff's § 504 and Title II of the ADA claims is denied.

Claims Under the GTLA

Plaintiff also asserts violations of the GTLA relating to state law claims of negligence, negligent supervision, negligent failure to train, and negligence per se related to her Title IX and § 1983 claims. Defendant contends that it has not waived immunity for the GLTA claims and argues that the claims should be dismissed. Plaintiff agrees that she cannot bring state law negligence claims that arise out of the same facts and circumstances giving rise to the violation of a civil right,

6

specifically those brought under § 1983. (Resp. p. 3, ECF No. 19.) However, she argues that her GTLA claims may be brought in conjunction with her Title IX claim.

The liability of Defendant, a governmental entity, for torts committed by its employees and agents is governed by the GTLA which codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities. Tenn. Code Ann. § 29–20–201; *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Under the GTLA, Defendant is generally subject to suit for civil claims sounding in negligence with certain enumerated exceptions. *Id.* Those exceptions include any injuries that may arise out of an allegation of civil rights violations, the infliction of mental anguish, and discretionary acts. Tenn. Code Ann. § 29-20-205.

It is well-settled that the GTLA's "civil rights" exception includes claims arising under §1983, and a plaintiff cannot circumvent the Defendant's immunity by couching its civil rights claim as one of negligence. *See, e.g.*, *Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) (holding that a plaintiff whose alleged injuries arose in the context of her civil rights claims could not avoid GTLA immunity merely by "couching" her claim in terms of negligence). Title IX is also a civil rights statute. *See generally CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008) (describing Title IX as a "civil rights statute"); *Grove City Coll. v. Bell*, 465 U.S. 555, 583 (1984) (Brennan, J., dissenting) (discussing "the broad remedial purposes of Title IX that consistently have controlled our prior interpretations of this civil rights statute"); *CSX Transp. Inc. v. Marquar*, 980 F.2d 359, 363 n. 4 (6th Cir. 1992) (discussing Title IX and "other civil rights statutes"); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1065 (S.D. Ohio 2017) ("Title IX was enacted to supplement the Civil Rights Act of 1964's ban on racial discrimination in the workplace and in universities."); *Powell v. Alcoa City Sch.*, 2009 WL 2983024 at *4 (E.D. Tenn. Sept. 14,

2009) ("The Office for Civil Rights serves the nation's student population and is charged with implementing a variety of federal civil rights statutes including: Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, and Title II of the Americans with Disabilities Act of 1990.")

Because Plaintiff's negligence claims arise out of the same facts and circumstances as her civil rights claims under both §1983 and Title IX , they fall within the civil rights exception to the waiver of immunity set forth in the GTLA and must be dismissed. *See Partee v. City of Memphis*, 449 F. App'x 444, 448 (6th Cir. 2011) ("A negligence claim falls within this exception [when] 'the same circumstances giv[e] rise' to both the negligence and civil rights claims. Stated another way, the GTLA 'preserves immunity for suits claiming negligent injuries arising from civil rights violations.'" (citations omitted)).

Moreover, Plaintiff's GTLA claims also fall into the GTLA's exception to the waiver of immunity for discretionary acts. Section 29-20-205 of the GTLA provides in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

As discussed in *Uhuru v. City of Memphis*, 2008 WL 4646156 at *12 (W.D. Tenn. Oct. 17, 2008),

> "The discretionary functions exception 'recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision' and therefore allows the government to operate without under interference by the Court." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992) (citation omitted). Basically, the discretionary function exception "prevents the use of tort actions to second-guess what are essentially legislative or administrative decisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 85 (Tenn. 2001)).

The *Uhuru* Court found that the allegations in the complaint that the Memphis Police Department and its director "failed to adequately screen, train, investigate, and discipline its officer defendants' were not sufficient "to raise more than a speculation that the actions of the City of which the Uhurus complain are not discretionary functions subject to immunity." *Id.*

This Court further explored the discretionary exception to the GTLA's waiver of immunity in another case in which the City of Memphis argued that the GTLA provided immunity against the plaintiff's allegation that it was liable for the death of the decedent "for the failure to screen, hire, train, and supervise its police officers." *Peatross v. City of Memphis*, 2015 WL 13021901 at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016). The Court found that the screening, hiring, training, and supervision of the officers "clearly" fell within the discretionary exception. *Id.*

> In *Bowers*, the Tennessee Supreme Court adopted the "planning-operational" test to determine whether an act fell within the discretionary function exception. *Id.*, 826 S.W.2d at 430. Under this test, "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* (citing *Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979)). Planning decisions, the court in *Bowers* ruled, often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *Id.*, 826 S.W.2d at 431.
>
> The sorts of determinations the MPD must make in how it screens, hires, trains and supervises its employees, and how it goes about investigating and disciplining them for any misdeeds can be better characterized as planning rather than operational functions. As a result, the City of Memphis is entitled to governmental immunity under the discretionary function exception of the TGTLA as to Plaintiff's charges of negligent supervision and training found in Count V of his Complaint.

*Id. See also Savage v. City of Memphis*, 620 F. App'x 425, 429 (6th Cir. 2015) (finding that "the sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary function exception.");

9

*Minor v. City of Memphis*, 2006 WL 889333 at *4 (W.D. Tenn. Mar. 30, 2006) ("The question of how thoroughly to train officers or discipline them, like the question of how to discipline combative employees in *Limbaugh*, is a policy determination. Consequently, it receives discretionary function immunity from tort liability under the TGTLA.") In the present case, Plaintiff has not alleged grounds for a negligence claim against Defendant based on facts or circumstances that would fall outside the discretionary-function exception to the wavier of immunity. Accordingly, her GTLA claim is barred by the discretionary function exception as well as the civil rights exception.

## CONCLUSION

Defendant's partial motion to dismiss is **PARTIALLY GRANTED** and **PARTIALLY DENIED**. The motion is granted as to the portion seeking to dismiss the claims brought pursuant to the GTLA. The motion is denied as to the portion seeking to dismiss the claims brought pursuant to § 504 of the Rehabilitation Act and Title II of the ADA.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 7, 2018.